5 Star Parking Sure. The question is there a deportation or deportation from that site.  And number one for the M 것 question. I need you to do the fourth one.  Get this. Right? So number three. Sure. The question is whether it should defer to an arbitrator's jurisdiction over a grievance. And secondly, whether it should defer to his interpretation of a re-opener provision in a collective bargaining agreement providing for negotiations in the absence of a right to strike. When a contract has several provisions, all of which the arbitrator cited, which are relevant. There's a broad grievance clause. There's a management rights clause, which does not reserve management's right to set wages. At article 20, there is a pay schedule, which sets minimum rates. It references an appendix, which lists two years of rates and then provides for re-opener. However, that provision does not end the wages of the employees at the end of the two years, which seems to be the thought that the district court had. There's some ambiguity there. I agree with that. But isn't the concern here with the meaning of the re-opener and what happens during the re-opener time? I mean, that's really the fact pattern, isn't it? Absolutely, Your Honor. I absolutely agree. The question here is what does the meaning of the re-opener, meaning what does the word The problem you have, though, when you use the word deference, as you did, the deference that is traditionally accorded arbitrators, is that the district court perceived what was the issue as a quote-unquote naked NLRA claim. So it didn't accord the arbitrator any deference at all. Correct. Absolutely, Your Honor. The court, under the deference standard, should have checked to see whether the court could have found a tolerable claim and so jurisdiction, and then secondly, could have found a reasonable basis for the claim, for the award. But it didn't do that. It went straight in a, in my view at least, a mistaken impression that this was a naked NLRB claim. But it was not. This clause does not involve collective bargaining under the NLRA. Well, it could arguably, but when it could arguably involve either an interpretation of the agreement or something under the NLRA, given our standard, we give them the benefit of the doubt and say, okay, it's all right if it draws something from the agreement. Correct, Your Honor. If there's a tolerable claim under, and there's newspaper guilt, and there are other cases which say if there's a tolerable claim, the arbitrator has jurisdiction. What about the fact that the agreement says, shall be reopened for the purpose of negotiating instead of shall be reopened and the parties shall thereupon be obligated to renegotiate? I mean, is the clause here sufficient for the arbitrator to have said, aha, I'm going to find whether the duty of negotiation was fulfilled, if you will? Your Honor, I think the arbitrator was, was focused on the word negotiate and had to use his judgment as to what the word negotiate meant. And as to whether there was a, there was a duty. And as to whether there was a duty and whether there actually was negotiations. The NLRA analysis is in the course of full resort to economic weapons. But I'd also note that the word impasse, and the judge seems to act as if the word impasse is a federal labor law claim exclusively, but it's not. It's a term of art. But if the district court had, I mean, if the arbitrator had only talked about impasse, I mean, luckily for you, he said there was no negotiation and it's the most contorted view of negotiation I've ever seen. He used those magic words. Yes. And that's probably a lucky thing because quite frankly, most of his opinion had to do with impasse, which is not referred to in the agreement at all. And I gave that some thought. And the problem the arbitrator had, I think, was you have an employer waving the flag saying you don't have any jurisdiction. This is impasse. This is, this is an issue for the NLRA. So he had to answer that. And then to me, you also had two labor lawyers handling the case. And if you go to see a shoemaker and you ask him what your problem is, you're going to get your shoes fixed. So we had two labor lawyers arguing about impasse in front of an arbitrator. I think to a certain extent, Judge Martini was led down the garden path, you know, I don't mean that in any pejorative sense, because the discussion was all, was about impasse and Mr. Grossman, your predecessor counsel, was discussing that impasse is an issue that can be decided both by the NLRA and by the arbitrator. I absolutely agree with you on that. I don't know that Judge Martini was thrown off the wall when he said, you know, this is only a question of impasse under the NLRA. Your Honor, I absolutely agree with that. I think Judge Martini got misfocused based on the discussion of impasse. And the second thing was this claim, which was a mantra throughout the argument that there are no wages after August 1st, but there were. By stipulating to the issue before the arbitrator, as they did, and by raising impasse as a defense, I mean, the argument can well be made, and I think it's made, that they effectively authorized the arbitrator to decide the issue of impasse, as well as the claims under Article 20 and Schedule A. Correct, Your Honor. I agree. That was the employer's defense, so the arbitrator had to deal with it. His view of negotiation was not met in this case. The way he interpreted and viewed the negotiating process, it wasn't there, and he had to deal with the employer's defense of impasse. And so I think that's where he was coming from. Given his findings on the CBA, on the stipulated issue, he really didn't even have to reach an issue of impasse. He found the CBA was violated before he ever got to decide any issue of impasse. He didn't have to decide the issue of impasse at all, given his decision on Article 20 and Schedule A. Your Honor, I agree with that. The problem is, I guess, for the arbitrator, the arbitrator feels compelled to give the parties an answer. Especially because it's going back. Right. So he wants to tell them, you know, they better behave. Maybe it's dicta in terms of his decision, but it's, you know, by the way, this isn't, you know, good faith or whatever. And the cases reflect, going through the cases reviewing arbitrator's awards, there's always a caution that if we start to tear them apart and look too deeply for ambiguities, we're going to encourage arbitrators or discourage arbitrators not to write awards, not to give their opinions. And it may very well be that this arbitrator, by talking too much about the issue of impasse, raises the problem, raises the issue. I think that's right. I think you say in your brief that it is known or it's understood that the NLRB won't deal with an issue when it's arguably covered by an agreement and that that might be the explanation as to why this was withdrawn. Sure. Is there anything in the record with respect to what actually happened there? The record is it was withdrawn. At the arbitration, the employer's counsel, and it's reflected in the award, talked about a problem with the 8D notice, but that would not be a reason to dismiss. So you're left analytically with three possibilities. Nothing in the record that says which of them? We don't know. Nothing in the record? Okay. But there's only three grounds that the NLRB could have acted. Either a collier deferral, the NCR case, which is two reasonable competing interpretations, they'll dismiss, or they may have found impasse and agreed with the employer's defense, but we just don't know. In the case Edna Pagel, which is in your brief, which you cited, there's a discussion that the NLRB is interpreting the act. And so they decided in the case of permanent replacement of strikers to dismiss a ULP charge under Section 883 of the act. At the same time, the court was asked to confirm an arbitrator's award reinstating the strikers under a collective bargaining agreement provision. So it's not necessary that there be a conflict between the two. Do we need to decide arbitrability of this issue at the outset? I thought there was an agreement by the parties that this would be submitted based upon whether there's a breach in the agreement. But is the issue of arbitrability before us, or is that the same issue or a different issue from whether what the arbitrator did exceeded the scope of his authority? The parties submitted... I'm asking because I talked to my law clerks about this, and I couldn't get it clear, and you must know these things. I hope. The parties agreed on the submission of an issue, and there is case law establishing that once the parties agree on the submission, then they can expand it. But they can't argue later that it shouldn't have been submitted to arbitration if they agreed that they would submit whether there was a violation. Correct. I think the grievance was everyone agreed the grievance was arbitrable. But the question is the employer constantly asserted that the NLRA issue was not, and the arbitrator agreed. I'm not deciding the NLRA issue of bargaining in good faith. He specifically said, I'm deciding whether there's a violation of the agreement. Yes, Your Honor. All right. Thank you.  Thank you, Your Honor. Good morning, Your Honor. Michael Cryan from Aaron Fox for the FLE Five Star Parking. I'd like to focus the court on the re-opener provision of the CBA because we've heard some arguments about how the arbitrator's ruling in this case grew out of the CBA. But at appendix page 117 is the re-opener provision. And it is a very broad provision. And it's important to understand that in labor law, and when we're talking about negotiating, page A117, Article 32 of the agreement provides that this agreement may be re-opened by either party. Right. For the purpose of renegotiating concerning wages and monetary fringe benefits. Right. Re-opener has a very special meaning in federal labor law. And the case that I cited to Your Honor, the Local 47 Electrical Workers, the D.C. Circuit case from 1991, as well as the Speed Rat case that the union cited in its rebuttal, talk about that. They talk about the importance of recognizing that re-opener negotiations are not simply discussions between the employer and the union. Re-opener has a very special meaning and can have real consequences. But where does that get you? What happens, Your Honor, is that the Supreme Court in the Litton case said that when you negotiate over a term of employment and you reach an impasse, the employer had the obligation to negotiate, but then also had the right to implement changes upon impasse. That right is not conferred upon five-star parking by the CBA at issue in this case. But the arbitrator here did not decide about the unilateral implementation of wages. He decided that there was no negotiation here. And that draws its essence from the agreement, does it not? It does not in this sense, Your Honor. What happened here was the arbitrator, and he does speak with almost Janus-like, saying that he's not deciding the NLRA issues. And then he comes back and he tells us at appendix page 54, I'm not convinced that an impasse existed. And then at page 57, he says there was no impasse. He found that five-star breached the agreement by reducing the wages without negotiations at page 55 of the agreement. Yes, Your Honor. Without ever specifying any specific terms of the agreement that allegedly were violated. But that was the specific issue he was asked to decide. And he decided it. How can you say at page 10 of the red brief, as you do, that the arbitrator's opinion that no impasse existed was, quote, the only issue decided, end quote? Two reasons I can say that, Your Honor. Number one, there is no provision in the CBA that was violated. Remember, the words, the terms of the collective bargaining agreement before this court only specified wage rates until July 31, 2004. Well, hold on now. You have a broad negotiation clause. It's broad, right? Are you saying that anything dealing with the opener is excluded from that clause? I'm not saying that, Your Honor. I'm saying we're in the specific context of a labor law collective bargaining agreement, which is different than a broad arbitration clause generally. And why is that? Because the Supreme Court has laid down a specific standard. And it involves situations like this, where the arbitrator dispenses his own brand of industrial justice. All right. What's the significance, then, of your conceding to this issue? I mean, it seems that it's grounded in the agreement. You cite Article 20 in Schedule A. This is the issue to the arbitrator. Your Honor. What's the significance of that? We did object to the jurisdiction of the arbitrator to decide the factual dispute at issue. Of impasse. Yes, Your Honor. Probably of impasse. Yes, Your Honor. And that's the only issue that was ultimately determined here. And the reason that's not – Well, how can you say that? I just asked you that two minutes ago. Yes, I did start – I gave Your Honor the first reasoning that I have about the context of federal labor law. And the other one is the context of federal labor law. I mean, anytime you have a collective bargaining agreement and there are words in it, they're going to have a certain labor law gloss, but that doesn't take it out of the agreement. In fact, it seems to me that once it's in the agreement with that gloss, that's the way we're to view what the word means. And the word negotiation is a term of art. It has a meaning. And he said, this is the most contorted definition of negotiations I have ever heard. The negotiations process is a give and take. It's a fascinating process. But he found they never allowed – the employer never allowed the negotiations process to really move forward or to pick up steam to see where they could reach some type of common ground. So he found there was no negotiation. And therefore, there was a unilateral reduction in wages in violation of the CBO. Without negotiation. Your Honor, that term negotiations, it was also construed by this court in the first Pennsylvania Power case that I cited, the 1989 case. And the court noted, just because a collective bargaining agreement almost always includes the word negotiations, that does not give the arbitrator license to decide federal labor law issues. Now, Your Honors are saying to me, but he also decided a question under the collective bargaining agreement. And I understand your question. The problem for the arbitrator here is that it doesn't draw its essence from the collective bargaining agreement. What do I mean by that? At no time are these wage rates specified by this collective bargaining agreement. And what this court said in Sitko is, the arbitrator has to draw the decision from the terms, from the precise terms of the CBA. And here, Your Honors have a situation where, yes, the question presented to the arbitrator was written down and was taken to the arbitrator and both parties attended. That's exactly what happened in the Sitko case. And virtually every arbitration, there is a question presented. That doesn't mean that the arbitrator resolved that question. Why did you stipulate to that issue, if you're only going to say that he couldn't decide it? We didn't. Two reasons, Your Honor. The first reason is that the union submitted in its grievance. They also mentioned the word impasse. And we disagreed with the union that the question was even presented. But the union filed a grievance the way that the CBA works is once they file it, it then goes to arbitration. And we did not waive our objection to that arbitration merely by attending it, Your Honor. But Your Honor, you stipulated to the issue before the arbitrator. It was more than just not waiving it or disagreeing with the issue. You stipulated to it. And now you're really saying he had no right to go there, aren't you? No, Your Honor. Because he never did end up going there. Well, that's a different matter. No, I understand, Your Honor. Now, you lost on the issue of arbitrability. Yes. You lost and then conceded and then agreed to the issue, correct? Could you not have appealed that when the arbitrator said, I'm sorry, it is arbitrable? You made a calculated decision, didn't you, not to appeal that, but to agree that what would be presented would be, is there a violation? Is that correct? Absolutely not, Your Honor. In the arbitration awarded pages 8 through 12, the arbitrator talks about that. There was the objection to the arbitrator's jurisdiction, which he took under advisement. He then held the arbitration sessions. Oh, so he didn't decide the issue? That's right, Your Honor. And then he issued his opinion on August 3rd. We filed in the district court on August 11th. But you could have not stipulated to the issue as to whether there's a breach under the agreement, couldn't you? Only, yes, Your Honor. But this court holds that when you object to the arbitration jurisdiction, you don't waive that defense. And that's exactly what, Your Honor brings up an excellent point. If there had been a ruling that it was arbitrable, we would have then immediately appealed that ruling. There was no such ruling until the one that's before Your Honors. And it's important, Judge Martini was absolutely correct. If you look at what the arbitrator did here, he injected his own fairness rationale. He goes off on this long discussion, Your Honors, about the no-strike clause that has absolutely no application to this case. The union also obtained a no-lockout provision in the very same Article 12. So there was no unfairness. And if Your Honors look at this award, this is exactly what the Third Circuit has been teaching the district courts in cases like the two Pennsylvania power cases and the Sitko case. That when you have the situation is here, and it's not presented in a commercial arbitration situation. You don't have that in commercial arbitration. That's why I was saying that before. You see, the problem here is, one problem, I suppose, I mean, does this whole case draw assessments from the CBA? You stipulated to at least a couple of sections that the arbitrator is supposed to be looking at. On the one hand. On the other hand, you're saying, no. That's right, Your Honor. We contested that this case was ever even about the collective bargaining agreement. And why is that? Because we proceeded under a Supreme Court decision, the Litton case, that gave us the right to implement upon impasse. And that's why. Yes, Your Honor. I was going to ask a question. You said that the no-lockout, no-strike provision helped you somewhat. But to my mind, the fact that that is in there and is a term that will control during that negotiating process, and the fact that it gives the union no ability to and no leverage on its side, heightens the interest of an arbitrator in the negotiation process and the fact that it should proceed with give and take so it can get to a result vis-a-vis wages as compared to having you implement unilaterally a reduced wage, which then they cannot strike. They cannot strike at it. Your Honor, it is touching upon the fairness rationale that the arbitrator perceived. But why would you... Doesn't it even more so then come within the concept of I am concerned about the negotiation process because the agreement has certain requirements? No, and I'll tell you why it doesn't, Your Honor. It does not allow a strike or a lockout, to be fair. It has an exchange there. But meanwhile, the board authority was re-bidding the contract, wasn't it? Yes, it was, Your Honor. So that's probably why they walked away from the negotiating table. Your Honor is hitting upon an important underlying point. Sure, because why should they negotiate a reduction in wages when the board authority is re-bidding the contract? Yes, Your Honor, and that's why an impasse was reached. But remember, this contract did have a no strike and no lockout provision, but it didn't say that the employer waived its right to implement upon impasse. So, Your Honor... Well, that would be incorporating NLRA provisions into the agreement, and I think you're saying that the two are so different. No, what I mean by that, Your Honor, is that striking and locking out are both permissible procedures under federal labor law, but they're not allowed under this collective bargaining agreement. Implementation is allowed. Five Star never gave up its substantial right to implement upon impasse. So once those negotiations happened... Well, okay, once those negotiations happened, here we get back to negotiations. Yes, and here we get back to the term impasse, and it was really... I say the only issue decided, and the reason I say that is that this court in the Pennsylvania Power case, the first one, the 1989 one, said it's important not to let the word negotiations abdicate the court's role in reviewing an arbitrator's decision. Well, you have to have a finding on negotiations before there can be a finding of impasse, right? Yes, Your Honor. So there is a finding on negotiations, that the negotiations, such as they were, were no more than two to three hours, and therefore, they were not negotiations. Therefore, by definition, there was no impasse. Your Honor, I think Your Honor just led us precisely to the federal labor law determination at the heart of this case and why the district court's opinion must be upheld here. If you have decisions such as this that on their face show the unfairness that was perceived by the arbitrator that could have been negotiated by the union at the negotiating table, and you will allow that decision to be enforced simply because the question presented always refers to the collective bargaining agreement. So that's always the situation that we're faced with. The finding was you declared impasse after two to three hours of negotiation. So I don't want to hear this unfairness, that you're suffering the unfairness. Your Honor, all I meant to say was that we urged the union to return to the bargaining table. They refused to negotiate any further, and that met the definition of impasse. Because they wanted information from you. They wanted discovery from you that you were refusing to give them. We gave them all the financial... And the contract was being re-bid. Your Honor, we... Their backs were against the wall here. Your Honor, we did give them all financial data about Newark Airport. They asked about other airports, which is never given in these kinds of cases. Well, you say that, but they were asking for it. Whether it should have been or not, that's not the issue here. The issue here is the fact that there is a finding. There were no negotiations. The contract specifically requires negotiations. I mean, I don't know how we have to get too much more complicated than that, because the arbitrator then found a violation of the CBA. Unilateral imposition of wage reductions. Because of no negotiations. Your Honor, I see that my time has expired. Okay, thank you very much. We'll hear rebuttal. Thank you, Your Honor. All right, fine. Thank you. The case was well argued. We'll take it under advisement.